UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CONTINENTAL DISC CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:13CV00037 ERW |
| | ) | |
| APPLIED MANUFACTURING | ) | |
| TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Applied Manufacturing Technologies, Inc.'s ("AMTEC") Motion to Dismiss Count II of Plaintiff's Complaint and to Dismiss or Strike any Prayer for Attorney's Fees ("Motion") [ECF No. 11].

I. **PROCEDURAL AND FACTUAL BACKGROUND**

On January 8, 2013, Plaintiff Continental Disc Corporation ("CDC") filed a Complaint against AMTEC, asserting claims for "Breach of the Purchase Agreement" (Count I); "Breach of Good Faith" (Count II); "Breach of Express Warranty, Missouri Revised Statute 400.313, UCC 2-313" (Count III); and "Breach of Implied Warranties of Merchantability and Usage of Trade, Missouri Revised Statute 400.2-314, UCC 2-314, Breach of Implied Warranty of Fitness for a Particular Use, Missouri Revised Statute 400.2-315, UCC 2-315" [ECF No. 1].

In its Complaint, CDC, a Missouri corporation, alleges that CDC is a leading manufacturer of rupture, or bursting, discs for a variety of process industries, including chemical processing, petrochemical, petroleum refining, pharmaceutical, liquid storage, food and dairy, aerospace, gases, electronics, and other markets. Rupture discs function as pre-designed "weak

points" in a pressurized system, and are designed to release pressure in a variety of ways when their tolerable pressure point is exceeded.

AMTEC, a California corporation, provides manufacturing services and support for businesses, for a variety of industrial components and systems. AMTEC proclaims to be a leading manufacturer of automated and semi-automated custom machines, robotic part handling systems, assembly machines, and other manufacturing systems. AMTEC's products and systems are used in customer applications, including Laser Engraving, Laser Marking, Laser Scribing, Laser Cutting, Pad Printing, Hot Stamping, Inkjet Marking, and Turn Key Automation systems.

CDC and AMTEC entered into a purchase agreement ("Purchase Agreement") on October 23, 2008, for the YAG laser system ("Laser System"). CDC intended to use the Laser System to score pressure sensitive rupture discs. AMTEC warranted that the Laser System would be free from defects in material and workmanship for 3,000 operating hours, or twelve months from the date of shipment to CDC. The parties ultimately agreed that the warranty period would begin on August 2, 2011. AMTEC further warranted that the Laser System was free from all defects and was fit for CDC's intended purpose. AMTEC acknowledged in the Purchase Agreement that CDC relied upon AMTEC's skill and judgment to furnish a Laser System that would conform to CDC's purposes. AMTEC guaranteed to carry out testing, at no additional cost to CDC, to verify that the equipment was capable of similar machining tolerances on nickel, monel, inconel and Hastelloy C materials. AMTEC agreed that CDC reserved the right not to proceed with the purchase if the test results were not satisfying. AMTEC further agreed to assist CDC in the enforcement of AMTEC's warranties, to the extent requested by CDC.

However, the Laser System failed to perform as promised. The Laser System never consistently performed in accordance with the specifications contained in the Purchase Agreement, and CDC was unable to achieve consistent results on scribing depth, or successfully test the Laser System with any repeatability. On July 26, 2012, CDC sought to return, within the twelve-month warranty period, the Laser System to AMTEC for a full refund, and notified AMTEC that the Laser System failed to conform with the terms of the Purchase Agreement. AMTEC refused to accept return of the defective Laser System, informing CDC that it had no obligation to accept CDC's return of the Laser System. AMTEC failed to honor CDC's reservation of the right not to proceed with the purchase of the Laser System if the results of the tests were not satisfying. Thereafter, CDC filed this action against AMTEC, asserting claims for breach of the Purchase Agreement, breach of the duty of good faith, and breach of express and implied warranties.

On February 7, 2013, AMTEC filed its Motion [ECF No. 11], and its "Answer and Affirmative Defenses to Plaintiff's Complaint" [ECF No. 10]. In its response to Count II of the Complaint, AMTEC stated it was moving to dismiss the count for failure to state a claim upon which relief may be granted, and therefore made no answer to the allegations contained within the claim. As well, AMTEC's Answer asserted failure to state a claim as an affirmative defense to all the claims contained in CDC's Complaint.

In its Motion, AMTEC moves to dismiss Count II of CDC's Complaint for failure to state a claim, pursuant to Federal Civil Procedure Rule 12(b)(6), contending that Missouri does not recognize an independent cause of action for breach of the duty of good faith. AMTEC also moves to strike, pursuant to Rule 12(f), any prayer made for attorney's fees, arguing that CDC fails to allege a contractual or statutory basis for an award of attorney's fees. However, in its

"Memorandum in Opposition to Defendant's Motion to Dismiss Count II of Plaintiff's Complaint and to Dismiss or Strike any Prayer for Attorney's Fees," CDC states "CDC's Complaint does not seek attorney fees" [ECF No. 16 at 4]. Accordingly, the Court will deny AMTEC's Motion to Dismiss or Strike any Prayer for Attorney's Fees, as moot.

## II. LEGAL STANDARD

A party may move under Rule 12(b)(6) to dismiss a complaint for "fail[ing] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test "the sufficiency of a complaint[.]" *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

A claim has facial plausibility sufficient to survive a motion to dismiss "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The two-step inquiry for resolving such motions begins with a court determination as to which of the complaint's allegations contain factual matter that can be accepted as true, and which allegations may be disregarded as conclusory statements, legal conclusions, or threadbare recitals of the action's elements. *Id.* at 678-79. After this initial evaluation establishes the existence of well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. Materials attached to the complaint as exhibits may be considered when construing the complaint's sufficiency. Fed. R. Civ. P. 10(c); *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002).

**III.     DISCUSSION**

In its Memorandum in Support of its Motion, AMTEC asserts that Missouri does not recognize an independent cause of action for breach of the duty of good faith, and argues that, consequently, Count II fails to state a claim upon which relief may be granted.   In its Memorandum in Opposition to AMTEC's Motion, CDC argues that Missouri law does recognize claims for breach of the duty of good faith, and states that "Missouri law specifically recognizes that every contract imposes an obligation of good faith in its performance" [ECF No. 16 at 1, 3, 5].

Contrary to AMTEC's assertion, Missouri does recognize breach-of-the-implied-duty-of-good-faith-and-fair-dealing claims.  *See* Mo. Rev. Stat. § 400.1-203 ("Every contract or duty within this chapter imposes an obligation of good faith in its performance or enforcement); *Stone Motor Co. v. General Motors Corp.*, 293 F.3d 456, 467 (8th Cir. 2002) (reversing district court's grant of summary judgment on Stone Motor's claim for breach of the duty of good faith and fair dealing because General Motors failed to demonstrate that no questions of material fact existed as to whether it exercised its discretion under the contract so as to evade the spirit of the transaction, or so as to deny Stone Motor its expected benefit); *Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 473 (Mo. Ct. App. W.D. 1986) (holding that a party committed breach of the covenant of good faith and fair dealing by resorting to a contract clause that provided for unilateral action, and by so doing, deprived the other party of its expected benefits under the contract).

Under Missouri law, a promise not to prevent or hinder performance by the other party is implied in every contract.  *Affordable Com'ties. of Mo., v. EF & A Capital Corp.*, 2012 WL 43520 at *10 (E.D. Mo. Jan. 9, 2012).  "A claim for breach of the implied covenant of good faith

and fair dealing is a contractual claim." *Id*. The duty of good faith and fair dealing in the performance and enforcement of contracts prevents one contracting party to exercise a judgment expressly conferred by the terms of the agreement in such a manner as to evade the spirit of the transaction, or so as to deny the other party the expected benefit of the contract. *See Stone Motor Co.,*, 293 F.3d at 467); *Martin*, 710 S.W.2d at 473.

In recognizing claims for breach of the duty of good faith and fair dealing, Missouri courts have declared that "[t]he implied duty of one party to cooperate with the other party to a contract to enforceable performance and achievement of the expected benefits is an enforceable contract right." *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo. Ct. App. W.D. 2000). A breach of this implied promise constitutes a breach of contract; accordingly, to succeed on its claim, in addition to showing the existence of a valid enforceable contract between it and AMTEC, the rights of the parties under the contract, a violation by AMTEC, and resulting damages, CDC would have to establish that AMTEC prevented or hindered its performance, or exercised a judgment conferred from the contract in a manner to evade the spirit of the parties' transaction, or to deny CDC its expected contractual benefits. *See Affordable Com'ties of Mo.*, 2012 WL 43520 (E.D. Mo. Jan. 9, 2012).

CDC alleges it and AMTEC entered into a Purchase Agreement for the Laser System. The Purchase Agreement, among other things, warranted that the Laser System would be fit for, and conform to, CDC's intended purposes, and that AMTEC would assist CDC in the enforcement of AMTEC's warranties. AMTEC also warranted that the Laser System would be free from defects in material and workmanship for a period of 3,000 operating hours, or twelve months from August 2, 2011, whichever came first. The Laser System failed to perform as promised, and failed to conform to CDC's purpose. The Laser System never consistently

6

performed in accordance with the specifications contained in the Purchase Agreement, and CDC was unable to achieve consistent results on scribing depth or successfully test the Laser System with any repeatability.  CDC sought to return the Laser System to AMTEC for a refund within the twelve-month warranty period, but AMTEC advised CDC that it had no obligation to accept CDC's return of the Laser System.  As a result of Laser System's failures, CDC was forced to spend thousands of dollars in an effort to remedy the defective system.  The Court finds that CDC's Complaint contains sufficient factual matter, accepted as true, to state a claim for breach of the duty of good faith.  The Court will deny AMTEC's Motion to Dismiss Count II of CDC's Complaint.  The Court will deny AMTEC's Motion to Strike, as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Applied Manufacturing Technologies, Inc.'s Motion to Dismiss Count II of Plaintiff's Complaint and to Dismiss or Strike any Prayer for Attorney's Fees [ECF No. 11] is **DENIED**.

Dated this __1st__ day of July, 2013.

_E. Richard Webber_
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE